## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————————— )
RACHEL EGAN,                                   )
                                   )
       **Plaintiff,**                          )
                                   )    **Civil Action No.**
     **v.**                                      )    **15-14169-FDS**
                                   )
**TENET HEALTH CARE d/b/a METROWEST**  )
**HOMECARE AND HOSPICE and LORI**      )
**PUCCETTI,**                                  )
                                   )
       **Defendants.**                         )
—————————————————————————— )

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTIONS TO AMEND

**SAYLOR, J.**

      This is an action alleging retaliation and wrongful constructive termination of employment.  In substance, plaintiff Rachel Egan alleges that defendant Tenet Health Care d/b/a MetroWest Homecare and Hospice ("Tenet") and defendant Lori Puccetti, her immediate supervisor at Tenet, wrongfully reduced her working hours after her return from leave taken pursuant to the Family and Medical Leave Act, and then retaliated against her for reporting unsafe conditions.

      Tenet, in separate motions, has moved to dismiss the complaint for insufficient service of process and lack of personal jurisdiction.  Puccetti has also moved to dismiss the claims against her under Fed. R. Civ. P. 12(c).  Plaintiff has filed two motions for leave to amend the complaint.  For the following reasons, Tenet's motion to dismiss the complaint for insufficient service of

process will be granted; Puccetti's motion for judgment on the pleadings will be granted; and

plaintiff's motion for leave to add new corporate entities as defendants will be granted.  The

remaining motions will be denied.

## I.      Background

### A.      Factual Background

Rachel Egan is a registered nurse.  (Compl. ¶ 1).  Egan alleges that Tenet Health Care

does business in Massachusetts as "MetroWest HomeCare and Hospice," a healthcare provider

with a principal place of business in Marlborough, Massachusetts.  (*Id.* ¶ 2).[1]  Lori Puccetti was

plaintiff's immediate supervisor at MetroWest.  (*Id.* ¶ 21).

In May 2014, after working at MetroWest for ten years, Egan took medical leave

pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*  (*Id.* ¶ 7).  Before

taking leave, Egan was working "not less than 40 hours per week."  (*Id.* ¶ 9).  She returned from

leave in September 2014.  (*Id.* ¶ 10).  The complaint alleges that Egan was informed on her

return that "there was uncertainty regarding the position she would be working in and uncertainty

regarding the number of hours" she would be allowed to work.  (*Id.*).  The complaint is unclear

as to whether her hours were reduced at that time, but does allege that MetroWest "made some

adjustments" to her shift duties and pay.  (*Id.* ¶ 13).

 The complaint also describes a series of incidents that appear to be unrelated to Egan's

FMLA leave.  On January 11, 2015, Egan received a request to remove a "PIC" line from a

patient.  (*Id.* ¶ 18).  When she attempted to review the relevant policies and procedures, she

discovered that MetroWest did not have any such policies in place or available to the staff.  (*Id.*

¶ 19).  Other nurses "communicated directly to Ms. Egan that they were not comfortable taking

---

[1] It appears that Tenet's proper corporate name is "Tenet Health Care Corporation."  As discussed in further detail below, the parties dispute the relationship between the Tenet Health Care and MetroWest corporate entities.

this step to remove the PIC line, as it would be unsafe for the patient and there appeared to be no policy in place for doing so." (*Id.* ¶ 20). Egan notified her supervisor, Lori Puccetti, of her concerns. (*Id.* ¶ 21). When Puccetti did not respond, Egan contacted Puccetti's boss, Wayne Reagan. (*Id.* ¶ 22).

Egan also prepared a "nursing note" regarding the incident. (*Id.* ¶ 23). "Thereafter, Ms. Puccetti . . . opened the computer system for nursing notes and changed Ms. Egan's nursing note, and [Puccetti] removed her own last name" from the note. (*Id.* ¶ 24).

Egan filed an incident report with MetroWest concerning the PIC line incident. (*Id.* ¶ 25). The complaint alleges that MetroWest retaliated against Egan by cutting her hours and reducing staff at the clinic, "creating unsafe conditions and practices for patients and staff." (*Id.* ¶ 26).

Egan then filed a *pro se* complaint of discrimination against MetroWest with the Massachusetts Commission Against Discrimination on July 22, 2015. (*Id.* ¶ 32). The complaint does not specify what allegations she made in her MCAD complaint.

On August 17, 2015, Puccetti advised Egan that "the clinic would only be staffed over the coming weekend without sufficient staff, leaving Ms. Egan to work with a reduction of staff by two full-time persons." (*Id.* ¶ 28). Egan "immediately sought further information/clarification." (*Id.* ¶ 29). Neither MetroWest nor Puccetti responded, however, and both "failed to communicate in any kind of timely manner (contrary to prior history and practices regarding communication between and among Ms. Egan and her supervisors." (*Id.*). Acting through counsel, Egan advised MetroWest that "she could not work at an understaffed facility, as the same would place patients at risk in exigent circumstances," and would place her own nursing license at risk. (*Id.* ¶ 33). MetroWest "refused to communicate with Ms.

Egan . . . regarding any kinds of remediation in staffing" to address Egan's concern.  (*Id.* ¶ 34).

Egan asserts that defendants' choice "not to communicate whatsoever at that time . . . forced her

to be constructively terminated."  (*Id.* ¶ 35).

The complaint alleges that Egan was forced to file a second incident report in September

2015, after Puccetti again changed one of her nursing notes.  (*Id.* ¶ 39).  The complaint does not

contain any specific details or further description of either the note or the changes allegedly

made by Puccetti.

### B.     Procedural Background

On November 10, 2015, Egan filed a seven-count complaint against defendants Tenet

Health Care and Lori Puccetti in Massachusetts Superior Court.  The complaint asserts claims for

breach of the Massachusetts Wage Payment Act, Mass. Gen. Laws ch. 149, §§ 148, 150 (Count

One); retaliation for asserting rights under the Wage Payment Act (Count Two); "Family

Medical Leave Act Violation and Retaliation" (Count Three); violation of the Massachusetts

Healthcare Whistleblower Statute, Mass. Gen. Laws ch. 149, § 187 (Count Four); breach of

contract (Count Five); promissory estoppel (Count Six); and intentional interference with

advantageous business relations (Count Seven).

Defendants removed the case to federal court on December 17, 2015.  On February 22,

2016, Tenet moved to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5).

On March 1, 2016, Puccetti moved to dismiss for failure to state a claim upon which relief can be

granted pursuant to Fed. R. Civ. P. 12(b)(6).  On March 16, 2016, Tenet filed a second motion to

dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

Plaintiff has moved to amend to amend the complaint or, alternatively, for jurisdictional

discovery "[i]f the Court is inclined to grant any of the defendants' motions to dismiss."  (D. 30).

4

In a separate motion to amend, plaintiff seeks leave to amend the complaint to add various related corporate entities as defendants.

## II.   Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.   Tenet's Motions to Dismiss

### A.   Motion to Dismiss for Insufficient Service of Process

#### 1.   Legal Standard

Before a federal court may exercise personal jurisdiction over a defendant, proper service of process must be effected.  *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  When the sufficiency of process is challenged under Rule 12(b)(5), the burden is on the

plaintiff to prove proper service.  *See Vazquez-Robles v. CommoLoCo, Inc.*, 757 F.3d 1, 4 (1st Cir. 2014).  The sufficiency of service made *after* removal of an action from state court is governed by the Federal Rules of Civil Procedure.  *See Feliz v. MacNeill*, 493 Fed. Appx. 128, 131 (1st Cir. 2012) (citing 28 U.S.C. § 1448; Fed. R. Civ. P. 81(c)).[2]

The Federal Rules of Civil Procedure set forth various acceptable methods by which service of process can be effected.  Under Rule 4(h), there are two ways in which a corporation, partnership, or association (as opposed to an individual defendant) can be served within a judicial district of the United States:  (1) by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where  service is made (here, Massachusetts); or (2) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(h)(1)(A), (B).

Under the Massachusetts rules, service can be made on a corporation in two ways:  "by delivering a copy of the summons and of the complaint to an officer, to a managing or general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process."  Mass. R. Civ. P. 4(d)(2).[3]

2.  **Analysis**

The complaint in this action was filed on November 10, 2015, and was removed on December 17, 2015.  The 90-day period for service under Rule 4(m) expired on March 16, 2016.

---

[2] Plaintiff alleges that she served Tenet on February 1, 2016; the case was removed to federal court by defendant Puccetti on December 17, 2015.

[3] Massachusetts Rule 4(d)(2) differs from Fed. R. Civ. P. 4(h) in that a corporation may be served by serving a "person in charge of the business . . . ."

*See Wallace v. Microsoft Corp.*, 596 F.3d 703, 707 (10th Cir. 2010) (period for service of process is measured from time of removal).[4]  Thus, in order to properly serve Tenet, plaintiff was required to deliver a copy of the summons and of the complaint to an authorized agent of Tenet by that time.  Fed. R. Civ. P. 4(h)(1)(B).

The basic facts of plaintiff's purported service do not appear to be in dispute.  On February 1, 2016, process server Robert Francisco delivered a copy of the summons and complaint to Sheila M. Zarella, a "Business and Reimbursement Manager" for MetroWest HomeCare and Hospice, LLC.  (Francisco Aff. ¶ 3; Zarella Aff. ¶ 3).  The parties do not appear to dispute that, as a formal matter, Zarella is an employee of MetroWest LLC, and is not an employee of Tenet Health Care.

Tenet contends that service was insufficient for two reasons.  First, Tenet contends that by serving an employee of MetroWest, instead of serving Tenet, plaintiff served "a holding of a subsidiary of Tenet, *i.e.*, an entity two steps removed from Tenet."  (Def. Mem. at 1).  Secondly, Tenet asserts that Zarella was not even authorized to accept service for the subsidiary that employed her, much less for Tenet itself.

Plaintiff has offered three alternative grounds for a finding that the service was proper.  First, she contends that Zarella held herself out as having authority to accept service on behalf of Tenet.  Second, she argues that the doctrine of corporate disregard should apply, so that service upon MetroWest is sufficient to establish service on Tenet.  Finally, Egan argues that service was proper because MetroWest is Tenet's agent in Massachusetts.

a.     **Apparent Authority**

Plaintiff's first contention—that Zarella had authority to accept service for Tenet—is

---

[4] Rule 4(m) was amended on December 1, 2015.  The amendment reduced the time limit for completing service from 120 days to 90 days.

based on her assertions that Zarella "responded affirmatively to [the process server's] inquiry about her authority and provided him with the spelling of her name, including her full middle name." (Pl. Opp. at 3). In substance, then, plaintiff's first theory is that Zarella had apparent authority to accept service for Tenet.

Under Massachusetts law, "[a]pparent authority is 'created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 745 (2000) (quoting Restatement (Second) of Agency, § 27); *accord Haufler v. Zotos*, 446 Mass. 489, 497 n.22 (2006). Apparent authority "is not established by the putative agent's words or conduct, but by those of the principal." *CSX Transp., Inc. v. Recovery Express, Inc.*, 415 F. Supp. 2d 6, 10 (D. Mass. 2006) (quoting *Rubel v. Hayden, Harding & Buchanon, Inc.*, 15 Mass. App. Ct. 252, 255 (1983)). "Apparent authority exists only if the plaintiff reasonably relied on the principal's words or conduct at the time he entered the transaction that the agent is authorized to act on the principal's behalf." *Theos & Sons*, 431 Mass. at 745 (citing *Commercial Credit Corp. v. Stan Cross Buick, Inc.*, 343 Mass. 622, 626 (1962)).

Plaintiff asserts in her affidavit that it "was the ordinary and customary practice" at MetroWest for the front desk reception to refer process servers to Zarella, and that "[as plaintiff] understood it, this was because [Zarella] was authorized to accept service." (Egan Aff. ¶¶ 4-5). Robert Francisco, the process server, avers that he "told Ms. Zarella that [he] needed someone authorized for the company to accept service of the summons and complaint," and that "Ms.

Zarella agreed to accept service and took the papers." (Francisco Aff. ¶ 3).[5]  Importantly, however, plaintiff has not presented any evidence of conduct by Tenet—the purported principal—that led her to believe that Zarella was authorized to accept service on its behalf. Although she asserts that MetroWest made it a practice to advertise itself as a member of the Tenet healthcare network, that is plainly insufficient to prove apparent authority.

In *Theos & Sons*, a plaintiff argued that the defendant manufacturer was vicariously liable for a dealer's actions because the dealer "as an authorized parts and service dealer, had actual, or at least apparent, authority to work on the truck engine on behalf of" the manufacturer.  431 Mass. at 742.  The plaintiff relied on the following facts as evidence of apparent authority: (1) the manufacturer's logos appeared on the dealer's invoices; (2) the manufacturer's logos were displayed at the dealer's place of business; (3) the dealer was required to display the approved signs; and (4) the dealer stated to the plaintiff that it was an "authorized parts and service dealer of" the manufacturer.  *Id.* at 745-46.  The Supreme Judicial Court found that "[a]lthough the question of agency is usually an issue for the fact finder, . . . [t]he mere use of a trademark and other logos of the defendant is not sufficient to raise a genuine issue of material fact that the defendant cloaked [the dealer] with apparent authority."  *Id.* at 742, 746.  MetroWest's use of the Tenet name is similarly insufficient to as evidence that Zarella (or MetroWest) had apparent authority to accept service of process.

As noted, apparent authority can be established only on the basis or words or conduct of the principal (here, Tenet).  *See CSX Transp.*, 415 F. Supp. 2d at 10.  Without evidence of any such conduct by Tenet in this case, the Court cannot find that Zarella had apparent authority to

---

[5] The Francisco affidavit does not specify which "company" Francisco was referring to, whether Tenet, MetroWest, or both.  The summons is made out to "Tenet Health Care d/b/a MetroWest Homecare and Hospice." (Pl. Opp. Ex. 5, "Proof of Service").

accept service of process on Tenet's behalf.

### b.      Corporate Disregard

The record indicates (and the parties do not dispute) that Zarella is, as a formal matter, an employee of MetroWest HomeCare & Hospice, LLC.  On its face, that fact would seem to preclude a finding that service on Zarella sufficed for service on Tenet under Rule 4(d)(2).  *See Metivier v. McDonald's Corp.*, 16 Mass. App. Ct. 916 (1983) (finding service on employee of subsidiary insufficient as service on parent company).  Egan, however, contends that the the doctrine of corporate disregard should be applied to find that service on MetroWest (through Zarella) was, effectively, service on Tenet.

In Massachusetts, there is a presumption of corporate separateness:  separate corporations are to be treated as separate entities absent an affirmative showing of compelling circumstances.  *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 128 (1st Cir. 2006). That presumption may be overcome by the operation of the doctrine of corporate disregard, which applies only when there is a compelling reason of equity "to look beyond the corporate form for the purpose of defeating fraud or wrong, or for the remedying of injuries."  *Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 625-626 (1990) (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 618 (1968)) (internal quotations omitted).

In determining whether circumstances warrant the operation of the doctrine of corporate disregard, the court must evaluate the evidence as to the existence of some or all of the so-called "*Pepsi–Cola* factors."  Those factors include:  (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by

dominant shareholder; (10) non-functioning of officers and directors; (11) use of the corporation

for transactions of the dominant shareholders; and (12) use of the corporation in promoting

fraud.  *Platten*, 437 F.3d at 128 (citing *Attorney Gen. v. M.C.K., Inc.*, 432 Mass. 546 (2000);

*Pepsi–Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 14-16 (1st Cir. 1985)).

At the time of her employment, plaintiff was an employee of a corporation entitled VHS

Acquisition Subsidiary No. 9, Inc., which did business as MetroWest HomeCare and Hospice.

(Cianci Aff. ¶ 5).  On March 13, 2015, MetroWest HomeCare & Hospice, LLC was formed, and

all of the former VHS employees were transferred to the new LLC.  (*Id.*).

Tenet contends that it is not the parent of either entity, but instead claims that both are

"indirect subsidiaries" of Tenet HealthCare.  (Rabe Aff. ¶ 5).  Tenet does not identify the actual

corporate entity that it contends is the direct parent, but describes "another unnamed corporation,

which is a direct subsidiary of Tenet and the parent corporation of [VHS and MetroWest LLC]."

(Dep. Supp. Mem. 2).

Plaintiff nonetheless contends that Tenet held itself out as MetroWest, that MetroWest

held itself out as Tenet, and that Tenet was "doing business" in Massachusetts as MetroWest.

She further alleges that MetroWest advertised itself as a part of the Tenet Health Care network;

that Tenet conducted a job search meant to fill the position of Executive Director at MetroWest;

that her employee benefits documents used the Tenet logo and referred her to the website

www.healthyatTenet.com; and that the representatives from corporate headquarters that

communicated with Egan identified themselves as officers or employees of Tenet.  She therefore

asks that the Court disregard the formal corporate separateness between the two entities.

Although plaintiff has submitted some evidence indicative of a confusing relationship

among the "MetroWest" entities, that evidence does not warrant disregarding the separateness of

Tenet (the parent company) as a corporate entity.  At most, Egan's evidence is indicative only of the type of corporate relationship to be expected between the local subsidiary and its national corporate parent.[6]  There is no evidence at all of a confused intermingling of business assets, nonobservance of corporate formalities, absence of corporate records, or any of the other *Pepsi-Cola* factors.  *Cf. Metivier*, 16 Mass. App. Ct. at 917 (refusing to disregard separate corporate entities and find service on McDonald's franchisee sufficient service on McDonald's Corporation).  In addition, although there is some evidence that Tenet handles human resource and compliance issues for MetroWest, "there is no evidence that one corporation controlled or used the other corporation other than for the mutual benefit of both."  *Lothrop v. N. Am. Air Charter, Inc.*, 95 F. Supp. 3d 90, 102 (D. Mass. 2015).

Furthermore, and in any event, plaintiff has not pleaded or submitted evidence of any equitable reasons to disregard the corporate form here, nor has there yet been a finding of misconduct by Tenet.  In deciding whether to disregard corporate form for purposes of personal jurisdiction, "the question is not whether [the corporate parent] can evade liability but only whether it can be properly brought into court in Massachusetts for an evaluation of liability."  *Id.* In a supplemental affidavit, plaintiff asserts that numerous employees have left MetroWest since June 2015, and that it is her "understanding" that MetroWest's business has been "drastically reduced in usage and revenue since 2015." (Egan. Sec. Aff. ¶¶ 19-21).  Although that assertion may be relevant to MetroWest's solvency, her "understanding" that revenue has been "reduced" simply is not compelling enough to justify disregarding the corporate form.

In short, plaintiff has not demonstrated that this case is the "rare situation" justifying

---

[6] Plaintiff describes Tenet as "a huge organization with operations all across the country," (Egan Aff. ¶ 6), and she has submitted a presentation, allegedly created by Tenet, that describes Tenet as a "diversified provider of healthcare services," with affiliates in 16 states, including three hospitals and four outpatient centers in Massachusetts alone.  (Pl. Opp. Ex. 8).

disregarding Tenet as a formal corporate entity.  *M.C.K., Inc.*, 432 Mass. at 555.  Accordingly,

even assuming service on Zarella sufficed as service on MetroWest (either the LLC or its

corporate predecessor), it was not effective service on Tenet.

### c.      Agent for Acceptance of Service

As a final argument, plaintiff contends that service was proper because MetroWest is

Tenet's "agent."  Under both federal and Massachusetts law, service may be made on "a

managing or general agent" of a corporation. Fed. R. Civ. P. 4(h)(1)(A), (B); Mass. R. Civ. P.

4(d)(2).

According to plaintiff, "the subsidiaries of Tenet are the agents of Tenet, acting as its

principal." (Pl. Supp. Mem. 3).  However, even assuming that MetroWest is Tenet's agent,

service is proper only if MetroWest is either a *managing* or *general* agent.

> The determination whether an individual is "a managing or general agent"
> depends on a factual analysis of that person's authority within the organization.
> One occupying this position typically will perform duties which are "sufficiently
> necessary" to the corporation's operations.  He should be "a responsible party in
> charge of any substantial phase" of the corporation's activity.  In brief, it is
> reasonable to expect that such an agent will have broad executive responsibilities
> and that his relationship will reflect a degree of continuity.

*Furukawa Elec. Co. of N. Am. v. Yangtze Optical Fibre & Cable Co*, 2005 WL 3071244, at *2

(D. Mass. Nov. 16, 2005) (quoting *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 513 (3d Cir.

1971)) (internal citations omitted).

Again, plaintiff bears the burden of proving that service was proper.  *See Vazquez-Robles*,

757 F.3d at 4.  Here, plaintiff has not offered any evidence demonstrating that either of the

MetroWest entities exercises broad executive responsibilities for Tenet, or that MetroWest

exercises authority outside of its own activities.  There is no evidence, for example, that

MetroWest is responsible for any of Tenet's other Massachusetts operations.  Simply put,

plaintiff has not shown that MetroWest has any authority over anything but MetroWest.  As a result, MetroWest, a twice-removed subsidiary of Tenet, cannot be fairly labeled a managing or general agent for Tenet.

### 3.        An Extension of Time is Not Warranted

Under the federal rules, service of process must take place within 90 days after the complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  In cases removed from state court, the 90-day clock does not begin to run until the action is removed.  *See Wallace*, 596 F.3d at 707.   More than 90 days have passed since the complaint was removed on December 17, 2016.  However, if the plaintiff shows good cause, then "the court must extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m).

> Good cause is likely (but not always) to be found when the plaintiff['s failure to complete service in [a] timely fashion is a result of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstance [s], or the plaintiff is proceeding pro se or in forma pauperis.  Pro se status or any of the other listed explanations for a failure to make timely service, however, is not automatically enough to constitute good cause for purposes of Rule 4(m).

*McIsaac v. Ford*, 193 F. Supp. 2d 382, 383 (D. Mass. 2002) (quoting Wright & Miller, Federal Practice and Procedure:  Civil 3d § 1137, at 342 (2002)).

There is no good cause for an extension here.  Tenet filed its motion to dismiss on the grounds of improper service on February 22, 2016, alerting Egan to the fact that Tenet considered service insufficient.  Egan did not attempt to correct service in the intervening time, nor has she requested an extension of time to serve Tenet properly.  Further, any blame for confusion as to whether service on Zarella constituted service on Tenet, or as to the entity for which Zarella believed she was accepting service, lies squarely with the plaintiff, who addressed

the summons to "Tenet Health Care d/b/a MetroWest HomeCare & Hospice." (Pl. Opp. Ex. 5, "Proof of Service").  Finally, the Court notes that plaintiff has not even requested an extension of time to effectuate service on Tenet.  The claims against Tenet will therefore be dismissed without prejudice.

### B.    Motion to Dismiss for Lack of Personal Jurisdiction

Tenet also moved to dismiss the complaint under Fed. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Importantly, Tenet did not file its motion under that rule with its first motion to dismiss under Rule 12(b)(5) for insufficient service of process, but instead asserted its objection to personal jurisdiction in a second, later-filed motion.

It is black-letter law that "a defense based on personal jurisdiction will be deemed waived if not made by a party's first-filed motion or included in her initial responsive pleading." *Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F.3d 62, 68 (1st Cir. 2003) (citing Fed. R. Civ. P. 12(h)(1)).  Tenet contends that it did not waive the defense of personal jurisdiction because a challenge to sufficiency of process is necessarily a challenge to the exercise of personal jurisdiction, and that the two issues are interrelated.  Tenet further contends there was no waiver because its arguments and facts submitted in support of its motion to dismiss based on insufficient service were relevant to, and overlapped with, the issue of personal jurisdiction.  Alternatively, Tenet asks the Court to permit it to amend its first motion under Rule 12(b)(5) to add the defense of personal jurisdiction.  Although it appears clear that Tenet has waived the defense, nonetheless, because the claims against Tenet will be dismissed on the basis of insufficient service of process, the Court need not reach the issue of personal jurisdiction.  Accordingly, Tenet's motion to dismiss under Rule 12(b)(2) will be denied as moot.

**IV.**    **Puccetti's Motion for Judgment on the Pleadings**

Defendant Puccetti has moved separately for judgment on the pleadings pursuant to Fed.

R. Civ. P. Rule 12(c).  A Rule 12(c) motion for judgment on the pleadings "is treated much like a

Rule 12(b)(6) motion to dismiss."  *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir.

2008).  It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of

pleadings and "implicates the pleadings as a whole."  *Aponte-Torres v. University of P.R.*, 445

F.3d 50, 54-55 (1st Cir. 2006).  To survive a motion for judgment on the pleadings, a plaintiff

"must state a claim that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  The plausibility standard "is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an

embryonic stage, the court must view the facts contained in the pleadings in the light most

favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's

behoof."  *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).  The court may

supplement the facts contained in the pleadings by considering documents fairly incorporated

therein and facts susceptible to judicial notice.  *See id.*; *see also In re Colonial Mortg. Bankers

Corp.*, 324 F.3d 12, 15-16 (1st Cir.2003) (recognizing this principle in the Rule 12(b)(6)

context).  There is no resolution of contested facts in connection with a Rule 12(c) motion; a

court may enter judgment on the pleadings only if the properly considered facts conclusively

establish the movant's position.  *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988).

Although the complaint is not entirely clear, Egan concedes that only the claims for

promissory estoppel (Count Six) and intentional interference with advantageous business

relations (Count Seven) are brought against Puccetti.

A.        **Promissory Estoppel (Count Six)**

The doctrine of detrimental reliance provides that "a promise given without consideration is binding when the promissor should reasonably expect to induce action or forbearance if injustice can be avoided only by enforcement of the promise." *Trifiro v. New York Life Ins. Co.*, 845 F.2d 30, 31 (1st Cir. 1988). "Courts typically invoke the doctrine of promissory estoppel when the formal requirements of contract formation are absent and when enforcing the promise would serve the interests of justice." *Steinke v. Sungard Fin. Sys.*, 121 F.3d 763, 776 (1st Cir. 1997); *see also Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995) ("[A]n action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration."). "An essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation." *Rhode Island Hosp.*, 419 Mass. at 848 (internal quotation and citation omitted).

The complaint alleges three promises allegedly made by defendants "in words and deeds": (1) that "MetroWest would treat Ms. Egan properly and in accordance with the policies and procedures normally applied to MetroWest employees"; (2) that Egan's adherence to those policies "would not be the basis for any discipline or termination"; and (3) that MetroWest "would follow the processes and procedures it established" with regards to employee discipline. In substance, plaintiff alleges that MetroWest and Puccetti essentially "promised" through "words and deeds" to follow MetroWest's standard policies and procedures. While such a claim is doubtful, at best, at a minimum the complaint does not identify what "words" or "deeds" formed the basis of those promises, nor are the alleged promises to follow policy sufficiently specific to support a claim for promissory estoppel. *See MacKenzie v. Flagstar Bank, FSB*, 738

F.3d 486, 497 (1st Cir. 2013) (affirming dismissal of promissory estoppel claim for failure to allege of a specific promise) (citing *Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336, 343 (D. Mass. 2011)); *Engler v. C.R. Bard, Inc.*, 1997 WL 136249, at * 4 (D. Mass. Mar. 6, 1997) (dismissing promissory estoppel claim where defendant's alleged representations did not "rise[] to the level of a specific promise."). Accordingly, judgment will be entered in Puccetti's favor on Count Six.

### B.   Intentional Interference with Advantageous Business Relations (Count Seven)

"In an action for intentional interference with advantageous relations, an employee must prove that (1) she had an advantageous employment relationship with her employer; (2) the defendant knowingly induced the employer to break that relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the employee was harmed by the defendant's actions." *Weber v. Community Teamwork, Inc.*, 434 Mass. 761, 781 (2001).

Where, as here, the action is brought against an official of the employer, the "improper motive or means" element is satisfied only when the plaintiff shows that "the controlling factor in the alleged interference was actual malice." *Id.* "Actual malice" is defined as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 476 (1992). The only factual allegations in the complaint that refer to conduct by Puccetti are that she twice changed nursing notes that plaintiff wrote, and that Puccetti refused to communicate with her about her concerns with weekend staffing. (*See* Compl. ¶¶ 24, 29, 39). The complaint does not allege that Puccetti acted with actual malice with respect to any of those alleged incidents, nor can actual malice be reasonably inferred from the relatively sparse number of factual allegations that concern Puccetti.

18

Furthermore, and in any event, the complaint does not contain any factual allegations from which it could be inferred that Puccetti's conduct induced MetroWest to terminate plaintiff's employment.[7]  Plaintiff appears to contend that Puccetti's note-changing conduct led to her filing an incident report, which led to MetroWest retaliating against her, which led to her constructive termination.  That chain of events, however, is far too tenuous to support a plausible claim for intentional interference with advantageous relations.  Judgment will therefore be entered in Puccetti's favor on Count Seven.

## V.   Plaintiff's Motions to Amend

### A.   Plaintiff's Contingent Motion to Amend

Along with her oppositions to defendants' motions, plaintiff moved, "depending upon the ruling upon various motions to dismiss pending, to amend her complaint . . . ." (D. 30).[8]  She requests that, "[i]f the Court is inclined to grant any of the defendants' motions to dismiss, . . . that she be allowed leave to amend to seek to cure any defects prior to issuing an order dismissing any defendant." (*Id.*).  The motion does not identify the particular allegations plaintiff seeks (or would seek) to add or amend.

After defendants filed their respective motions under Rule 12, plaintiff did not seek to amend her complaint, but instead chose to oppose those motions on the merits (and even moved for sanctions against Tenet for filing its motion to dismiss for insufficient service of process).  As a general matter, it is not appropriate to allow a plaintiff to use a Rule 12 motion to dismiss as a vehicle to identify deficiencies in the complaint so that the plaintiff can then make corrections

---

[7] As plaintiff herself notes in her opposition brief, such conduct was taken not to induce MetroWest to break its relationship with her, but "apparently to limit blame to Ms. Puccetti in connection with the incidents." (Pl. Opp. at 2).

[8] A party may amend a pleading once as a matter of course within "21 days after serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

with the benefit of hindsight and the court's analysis.  Doing so would effectively amount to "coaching" from the court in how to improve the complaint, and is manifestly unfair to the defendant.

Plaintiff was "put on notice of the deficiencies in the complaint by the motion to dismiss. If [she] had something relevant to add, [she] should have moved to add it then." *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015).  Under the circumstances, plaintiff has not provided a valid reason for granting her leave to amend the complaint in light of this ruling, and her motion will therefore be denied.

### B.        Second Motion to Amend the Complaint

Plaintiff has also moved pursuant to Rule 15(a)(2) to amend the complaint to add as new defendants MetroWest HomeCare and Hospice, LLC d/b/a MetroWest; VHS Acquisition Subsidiary Number 9, Inc. d/b/a MetroWest Medical Center; and Vanguard Health Systems, Inc. d/b/a MetroWest Medical Center.  (D. 41).  In determining whether to grant a motion to amend, the court must examine the totality of the circumstances and "exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).  Under the circumstances, the Court will grant the motion and allow Egan to add those parties as defendants.

### VI.      Conclusion

For the foregoing reasons,

1.        The motion of defendant Tenet Health Care to dismiss under Rule 12(b)(5) is GRANTED and the claims against Tenet are DISMISSED without prejudice;

2.        The motion of defendant Tenet Health Care to dismiss under Rule 12(b)(2) is DENIED as moot;

3.      The motion of defendant Lori Puccetti for judgment on the pleadings as to Counts

Six and Seven is GRANTED;

4.      Plaintiff's first motion to amend the complaint (D. 30) is DENIED; and

5.      Plaintiff's second motion to add new defendants (D. 41) is GRANTED.

**So Ordered.**


                                            /s/  F. Dennis Saylor
                                            F. Dennis Saylor IV
Dated:  June 27, 2016                       United States District Judge